67 F.3d 699
 43 Fed. R. Evid. Serv. 34
 Sandra NICKS, Appellee,
v.
STATE OF MISSOURI; Bellefontaine Habilitation Center;
Keith Schafer, Individually and in his official
capacities; Gregory Kramer,
Individually and in his
official capacities;
Defendants,
Margaret Kesselring, Individually and in her official
capacities; Sherris McMahan, Individually and in
her official capacities; Kay Karras,
Individually and in her
official capacities,
Appellants.
 No. 94-3752.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 16, 1995.
Decided Oct. 12, 1995.
 
 Karen King Mitchell, Chief Counsel Governmental Affairs Division, Attorney General's Office, Jefferson City, Missouri, argued, for appellant.
 Mary Anne Sedey, St. Louis, Missouri, argued, for appellee.
 Before BOWMAN and HEANEY, Circuit Judges, and KYLE,* District Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 Kay Karras, Margaret Kesselring, and Sherris McMahan appeal the judgment of the District Court[1] awarding damages to Sandra Nicks on her sexual harassment claims under 42 U.S.C. Sec. 1983 (1988). We affirm.
 
 I.
 
 2
 The evidence submitted to the jury in this case, viewed in the light most favorable to the jury's verdict, showed that Nicks was sexually harassed by Robert Little, a co-worker, from 1987 to 1989 while she was employed as a psychologist at the Bellefontaine Habilitation Center (BHC), a state-run mental health facility. BHC consists of office buildings and group homes occupied by patients in a setting that resembles a college campus. Little was a qualified mental retardation professional assigned to a group home in BHC's Unit I; Nicks was never assigned to work in that group home. Little's unwanted attention included, but was not limited to, purposeless visits, some of several hours' duration, to the office Nicks shared with Karras; Little's attempts to discuss his personal and marital problems with Nicks; statements of Little's desire to have a relationship with her; quests through the parking lot for her car; and attempts to follow her around at work. The evidence of Little's harassing behavior is substantial.
 
 
 3
 Nicks testified that she reported Little's conduct to her immediate supervisor, defendant Kay Karras, in the fall of 1988, and Karras corroborated Nicks's testimony. Rather than taking action to correct Little's job-related conduct, Karras suggested that Nicks work at one of BHC's group homes when Nicks's schedule required her to work alone after regular business hours. Little, however, followed Nicks to the group homes and continued to demonstrate his unwelcome interest in her. Nicks again reported Little's conduct to Karras, who did nothing. Nicks twice reported Little's conduct to Little's immediate supervisor, Ron Gerhardt, who also did nothing. Nicks and other BHC employees requested a meeting with defendant Sherris McMahan, manager of BHC's Unit I, to discuss Little's conduct. Nicks and other employees reported that Little was following Nicks around the campus and pursuing her during both day and night shifts. They also stated that Little's behavior was getting progressively worse. McMahan refused to act, stating that BHC could not do anything until Little "did something" to Nicks. Tr. vol. IV at 13. Karras testified that she reported on the concerns raised at the meeting to defendant Margaret Kesselring, BHC's personnel director. Nicks also called Kesselring to schedule a meeting regarding Little's behavior. Kesselring, however, told Nicks that "it's irrelevant," Tr. vol. III at 91, 92, and took no action against Little even though BHC's disciplinary procedures provided for sanctions ranging from counseling to discharge. In fact, when Little resigned in October 1989, Kesselring recorded that he was an employee in good standing, which made him eligible for reemployment at BHC.
 
 
 4
 On March 2, 1989, Nicks requested a 30-day sick leave, which was denied by BHC despite the fact that Nicks's treating psychologist and psychiatrist both recommended a medical leave. Nicks did not report for work, and BHC dismissed her effective April 18, 1989. Nicks appealed her dismissal to the Personnel Advisory Board (PAB), which reinstated Nicks with back pay and attorney fees. On February 7, 1991, the decision and order of the Board was affirmed by the Circuit Court of St. Louis County. During Nicks's absence from BHC, however, Little was not idle. He visited her apartment complex, posing as a concerned co-worker, and convinced the apartment manager to let him into Nicks's apartment. He telephoned Nicks at her apartment several times daily, calling back when Nicks would hang up on him. He sent a long personal note professing his "love" for Nicks in a package disguised to look as if it had been sent by a St. Louis University professor. He left notes for her at St. Louis University, where she was taking graduate courses, and, on one occasion, he left a single red rose and a note for Nicks at the psychology department office. This behavior continued through August 1989. During all of this time, Little was still employed by BHC, and the evidence shows that the individual defendants were aware of Little's continuing harassment of Nicks.
 
 
 5
 During the period between her dismissal and her reinstatement, Nicks instituted workers' compensation proceedings and received compensation for a permanent partial disability resulting from the emotional stress caused by Little's harassment. On August 17, 1990, she also filed this action in federal district court for damages and injunctive relief. The District Court disposed of several counts of her complaint in pre-trial rulings. At trial, Nicks's Sec. 1983 claims against Karras, Kesselring, and McMahan were submitted to the jury while her Title VII claims for injunctive relief against the State of Missouri and BHC were submitted to the court. The jury found in favor of Nicks on her Sec. 1983 claims and awarded $70,000 in compensatory damages for mental anguish and suffering and $4,500 in punitive damages against Karras, Kesselring, and McMahan. The court found Missouri and BHC liable for violating Nicks's Title VII rights and granted injunctive relief, requiring BHC to circulate its sexual harassment policy and to conduct training on this topic.
 
 
 6
 Missouri and BHC have not appealed from the court's judgment. The individual defendants, however, appeal from the judgment entered on the jury's verdict and from the court's denial of their motion for judgment as a matter of law or for a new trial. They argue that (1) evidence of Little's continuing harassment of Nicks after she was no longer employed by BHC should have been excluded because it is irrelevant and prejudicial and because the defendants were entitled to qualified immunity; (2) they were entitled to judgment as a matter of law because the evidence was insufficient in a number of different ways; (3) jury instruction 10 is an incorrect statement of the law; and (4) they were entitled to judgment as a matter of law on Nicks's claim for punitive damages because Nicks did not prove that they acted with reckless or callous indifference to Nicks's constitutional rights.
 
 II.
 
 7
 The appellants first argue that evidence of Little's conduct during the period between Nicks's dismissal and her reinstatement to her position at BHC should have been excluded because it is irrelevant and prejudicial or because the appellants were entitled to qualified immunity with respect to Nicks's claims for damages attributable to this period. We disagree. A district court has broad discretion to admit or exclude evidence, and such a decision will not be disturbed "absent a clear and prejudicial abuse of discretion." Laubach v. Otis Elevator Co., 37 F.3d 427, 428-29 (8th Cir.1994). We find no such abuse of discretion in this case.
 
 
 8
 The appellants argue that they cannot be liable for Little's actions toward Nicks during the period following her dismissal when she was not an employee of BHC. The evidence of Little's conduct during this period, they argue, is not admissible because Little was not acting under color of state law once Nicks was no longer a fellow state employee. In other circumstances, this argument might be persuasive. The appellants in this case, however, misunderstand Nicks's theory of the case. Nicks does not argue that Karras, Kesselring, and McMahan are responsible for Little's conduct because Nicks was once employed by BHC. Rather, Nicks argues that the appellants are responsible for Little's conduct during the period following Nicks's dismissal because that conduct was a natural and foreseeable consequence of their failure to prevent Little from harassing Nicks while both were employed at BHC. In other words, Nicks argues that the appellants' inaction while she was employed at BHC was the cause in fact of all of Nicks's injuries, both before and after her dismissal. See Butler v. Dowd, 979 F.2d 661, 669-70 (8th Cir.1992) (noting that defendant can be liable under Sec. 1983 for unconstitutional deliberate indifference if that is "cause in fact" of plaintiff's injuries), cert. denied, --- U.S. ----, 113 S.Ct. 2395, 124 L.Ed.2d 297 (1993).
 
 
 9
 We believe a jury reasonably could conclude that Little's conduct during the period following Nicks's dismissal flowed from the previous inaction of the appellants that Nicks argues violated her rights. Thus, evidence that tended to prove that Little continued to harass Nicks after her dismissal by their common employer, her superiors never having lifted a finger to discourage Little's offensive conduct prior to Nicks's dismissal, is clearly relevant to the jury's assessment of Nicks's damages. See Fed.R.Evid. 401. The District Court did not abuse its discretion by admitting that evidence.[2]
 
 
 10
 We turn next to the appellants' related argument that they were entitled to qualified immunity from damage claims based on the evidence in question because Nicks had no clearly established right to be free from sexual harassment by a fellow BHC employee following her dismissal by BHC. This argument misses the point. The appellants do not contend that Nicks did not have a clearly established constitutional right to have her supervisors take reasonable steps to protect her from sexual harassment by a fellow employee in her public-sector workplace. (We therefore need not, and do not, decide whether Nicks had any such right.) Thus this case is not about the viability of Nicks's Sec. 1983 claims based on the Equal Protection Clause. The case was submitted to the jury on Nicks's Sec. 1983 equal protection claims over objections, but in this appeal the appellants have not challenged the instructions' underlying premise that supervisors may be held liable under the Equal Protection Clause for a single instance of a failure to protect a female employee from sexual harassment at the hands of a fellow employee.[3] The appellants' liability to Nicks is based on events that occurred during her employment at BHC. Her theory of the case is that Little, never cautioned and never disciplined by the appellants during Nicks's employment at BHC, continued to harass her after she was dismissed by BHC, thereby adding to the injuries that flowed from the appellants' failure to fulfill their duty to her prior to her dismissal. Thus whether the appellants were entitled to qualified immunity from suit on the basis of Little's post-dismissal harassment of Nicks is irrelevant. Once found liable for their conduct prior to Nicks's termination, they are responsible for the natural and probable consequences of that conduct, including Little's continuing harassment of Nicks after she was dismissed from her employment at BHC.
 
 III.
 
 11
 Karras, Kesselring, and McMahan raise a number of arguments relating to the sufficiency of the evidence that Nicks introduced against them. For a variety of reasons, they argue that the District Court should have granted their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50. We review de novo the District Court's denial of the appellants' motion for judgment as a matter of law, applying the same standards as the District Court. See Sullivan v. National Football League, 34 F.3d 1091, 1096 (1st Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995). Judgment as a matter of law is appropriate when the nonmoving party has not offered sufficient evidence "to support a jury verdict in his or her favor." Abbott v. City of Crocker, 30 F.3d 994, 997 (8th Cir.1994). A court should not set aside a jury's verdict lightly, and we recognize that "our task in reviewing a judgment entered on a jury verdict is simply to inquire whether, viewed in the light most favorable to [the nonmoving party], the evidence at trial supports the verdict." Rademaker v. Nebraska, 906 F.2d 1309, 1313 (8th Cir.1990). The nonmoving party is entitled to "the benefit of all reasonable inferences from the evidence," and the court may not reassess the jury's credibility decisions. Abbott, 30 F.3d at 997.
 
 
 12
 Kesselring argues that she was entitled to judgment as a matter of law because the evidence was insufficient to show that she knew of Little's actions. We disagree. While the appellants at trial vigorously contended to the contrary, the evidence tends to show that all of the individual defendants knew of Little's behavior and failed to take any steps to stop it. Based on the evidence at trial, the jury could reasonably believe that Karras discussed with Kesselring the concerns raised by Nicks and other employees at their meeting with McMahan. The jury could also reasonably believe that Kesselring knew of and had considered Nicks's complaints about Little's harassment before deciding that they were "irrelevant," Tr. vol. III at 91, 92. Nicks thus provided a sufficient evidentiary basis for a reasonable jury to find that Kesselring knew of Little's conduct, and that nothing had been done about it, prior to Nicks's termination. See Fed.R.Civ.P. 50.
 
 
 13
 Kesselring and Karras argue they were entitled to judgment as a matter of law because the evidence was insufficient to show that they had the authority or control over Little necessary to find them liable for their failure to intervene. Kesselring and Karras were both supervisors, but they argue they cannot be liable for Little's actions because they were not his supervisors. See Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir.1987) (noting that supervisors are liable for acts of subordinates if plaintiff's injuries result from breach of supervisor's duty to train, supervise, or control action of subordinates). We are not persuaded. Kesselring and Karras were in supervisory positions, and because of their positions Nicks was entitled to look to them for protection from Little. They could have taken action to produce an appropriate response by BHC to Nicks's complaints, and they were totally remiss in not doing so. As Nicks's supervisors, they had a duty to act. That the harasser did not report to them does not excuse their dereliction of this duty.
 
 
 14
 Karras, Kesselring, and McMahan argue that the District Court should have granted their motion for judgment as a matter of law because Nicks did not prove that she suffered any actual damages. They contend that Nicks has been fully compensated for the injuries she suffered because she was awarded back pay and reinstatement by the PAB and workers' compensation by a state agency. We reject this argument. While some of Nicks's injuries have been remedied, it does not follow that others do not remain unremedied. Nicks argues that the PAB and workers' compensation awards did not remedy the "mental anguish and suffering ... she sustained and is reasonably certain to sustain in the future," Instruction 16, which were the only compensatory damages that the jury was instructed to consider. We agree with Nicks, and the evidence submitted at trial is clearly sufficient to establish injuries in the form of mental anguish and suffering.
 
 
 15
 The appellants' main contention is that the jury's award of compensatory damages in this case is duplicative of the judgments Nicks already had obtained. The relief sought through Instruction 16, however, is certainly not duplicative of the back pay and reinstatement she received through the PAB. As to the state workers' compensation award, its purpose was to compensate Nicks for a "15 percent permanent partial disability of the person as a result of on-the-job sexual harassment which caused depression and conversion disorder and borderline hypertension," Nicks v. Bellefontaine Habilitation Ctr., Injury No. 89-105577, Mem. at 13 (Mo.Workers' Comp.Div. Dec. 19, 1990). The injury resulting from a permanent partial disability is a reduction in the injured worker's earning capacity. While this injury is related to the mental anguish caused by the appellants, the workers' compensation award does not compensate Nicks for the mental anguish itself. Mental anguish and pain and suffering constitute injuries distinct from lost earning capacity. Nicks thus was not compensated fully through the PAB and workers' compensation proceedings, and the District Court properly denied the appellants' motion for judgment as a matter of law based on insufficient proof of actual damages.
 
 
 16
 Karras, Kesselring, and McMahan claim that the jury's verdict should have been set aside because Nicks, at most, proved mere negligence on their part. We disagree. The instructions, unchallenged in relevant part in this appeal, required the jury to find that "the defendant demonstrated deliberate indifference to or tacit authorization of the acts of Robert Little" in order to return a verdict for Nicks. Instruction 11. The record supports the jury's verdict on this point. The appellants wish to reargue the facts on appeal, claiming that "at most, ... the appellants were negligent in not knowing of the alleged harassment." Appellant's Brief at 40. That assertion is patently false. The jury had evidence before it that would allow it reasonably to find that each appellant knew of the harassment and was deliberately indifferent to it. Thus this claim is without merit.
 
 
 17
 Finally, Karras, Kesselring, and McMahan argue that they were entitled to judgment as a matter of law on the issue of punitive damages because Nicks failed to prove that they acted with reckless or callous indifference to Nicks's constitutional right to be afforded a reasonable degree of protection from sexual harassment in her public-sector workplace. The appellants do not argue that Nicks is not asserting a recognized constitutional right, see supra n. 3, but that they did not act with the reckless or callous indifference required for the jury to award punitive damages. Again, the jury found against the appellants on this point, and the record is sufficient to support the jury's verdict. Nicks reported Little's harassing behavior to her supervisors on multiple occasions, all three appellants were aware of the situation, and none of them did anything to deter Little from continuing his harassing behavior. McMahan even went so far as to brush off Nicks's complaints by saying that BHC would not intervene until Little "did something" to Nicks, clearly implying that she would not act until Little engaged in some type of physical assault. These facts, among others, are sufficient to support the jury's decision that the appellants' failure to act was the product of their reckless or callous indifference to her plight.
 
 
 18
 In sum, we conclude that the jury's verdict is supported by the evidence, and the District Court properly denied the appellants' motion for judgment as a matter of law.
 
 IV.
 
 19
 The appellants contend that Instruction 10 was an incorrect statement of the law regarding the liability of supervisors insofar as it could have permitted the jury to hold the appellants liable for a failure to adequately train or supervise Nicks, the victim of the harassment. We need not address this issue, however, because this challenge has not been properly preserved for review. In order to preserve for appellate review an issue regarding the substance of a jury instruction, Federal Rule of Civil Procedure 51 requires that a party object to the instruction, "stating distinctly the matter objected to and the grounds of the objection." Id. Absent such a distinct statement, this Court may review the instruction only under the plain error standard. Tinnon v. Burlington No. R.R. Co., 898 F.2d 1340, 1343 (8th Cir.), cert. denied, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990). In Tinnon, this Court held that an objection to an instruction "on the ground that it was not applicable to the facts and that it was misleading" was not the same as an objection on the ground that "a portion of the Arkansas statute [was] omitted," the ground that was raised on appeal. Id. The appellants in this case objected to Instruction 10 because they believed that the evidence did not support certain language included in the instruction. See Tr. vol. V at 68-70. The appellants, however, failed to object to the instruction as an incorrect statement of the law and have waived that issue. Thus our review is under the plain error standard, and, even assuming the challenged language constitutes plain error, the appellants have not demonstrated any prejudice to their substantial rights warranting reversal of the District Court's judgment.
 
 V.
 
 20
 For the reasons stated, the judgment of the District Court is affirmed.
 
 
 
 *
 The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri, presiding with the consent of the parties pursuant to 28 U.S.C. Sec. 636(c) (1988 & Supp. V 1993)
 
 
 [2]
 At oral argument, counsel for the appellants argued that if the evidence was admissible only as evidence of the foreseeable consequences of the appellants' conduct, the District Court should have given a limiting instruction. No such instruction was requested by the appellants. A review of the record indicates that the District Court admitted the evidence for a number of reasons, including "to demonstrate a continuation of a pattern that arose previously" in the context of Nicks's argument that Little's "conduct may have been changed if [appellants] had taken some action." Tr. vol. III at 121, 122 (Karen King, counsel for appellants, stating her understanding of basis for court's decision to admit evidence of post-dismissal harassment). We will not reverse a judgment on the ground that the trial court failed to give an unrequested limiting instruction unless such a failure constitutes plain error that prejudiced the substantial rights of the appellants resulting "in a miscarriage of justice if left uncorrected." Rush v. Smith, 56 F.3d 918, 922 (8th Cir.1995) (en banc), cert. denied, --- U.S. ----, 116 S.Ct. 409, 133 L.Ed.2d 328 (1995). No showing of such prejudice has been made in this case
 
 
 [3]
 We doubt that any constitutional deprivation arises from a single instance of failure by supervisors to protect an employee from sexual harassment by her fellow employees, whether the failure occurs before or after the termination of her employment, and we thus have grave reservations regarding whether such a claim is cognizable under Sec. 1983. In Bohen v. City of East Chicago, 799 F.2d 1180 (7th Cir.1986), the seminal case on Sec. 1983 liability for sexual harassment, the Seventh Circuit held that pervasive harassment of female employees in a public-sector workplace, if uncorrected by management, can constitute a basis for imposing liability upon supervisors under the Equal Protection Clause on a failure-to-protect theory. Id. at 1187. Neither the Supreme Court nor this Court has reached this question, and we do not do so today. Even assuming that the holding in Bohen is the law of the land, we note that the Seventh Circuit was careful to confine liability to cases in which the failure to protect is shown to amount to "intentional discrimination" on the basis of the harassee's sex. Id. The record in this case may well fall short of showing such discrimination against Nicks by her female supervisors, but the case was submitted under instructions that did not require Nicks to show that her supervisors' failure to act amounted to intentional discrimination on the basis of her sex, and this aspect of the instructions is not challenged in this appeal. We therefore do not address the question of whether the evidence is sufficient to support a finding of intentional discrimination