Judy CARROLL, Plaintiff,

v.

VILLAGE OF SHELTON, NEBRASKA, also known as the City of Shelton, Nebraska, a political subdivision, Lynn McBride, individually and in his off. cap., Jim Spellman, ind. and in his off. cap., Lee Landell, ind. and in his off. cap., Merlyn Cole, ind. and in his off. cap., Terry Moffitt, ind. and in his off. cap., John Lacey, ind. and in his off. cap., and George Svoboda, ind. and in his off. cap., defendants.

No. 4:CV95–3363.

United States District Court,
D. Nebraska.

Dec. 19, 1996.

ipated in or condoned this conduct. She raises the following claims for relief in her complaint: (1) denial of due process of law, in violation of 42 U.S.C. § 1983; (2) discrimination based upon her sex and nation origin, in violation of 42 U.S.C. § 2000e–2 (Title VII); (3) denial of equal protection, in violation of 42 U.S.C. § 1983; and (4) violations of the Nebraska Fair Employment Practice Act, Neb.Rev.Stat. § 48–1101. The defendants have moved, in three separate motions, for summary judgment on a number of grounds. (Filings 42, 53, and 57.) For the reasons stated more fully below, I shall grant the motions with respect to plaintiff's Title VII claims, due process claims, and equal protection claim against Defendant Svoboda in his official capacity, and I shall deny the motions with respect to each of her remaining claims.[1]

David W. Jorgensen, Nye, Hervert Law Firm, Kearney, NE, for Judy Carroll.

Jerry L. Pigsley , Harding, Shultz Law Firm, Lincoln, NE, William T. Wright, Jacobsen, Orr Law Firm, Kearney, NE, for Village of Shelton, Nebraska, Lynn McBride, Jim Spellman, Lee Landell, Merlyn Cole, Terry Moffett.

Terrance O. Waite, Murphy, Pederson Law Firm, North Patte, NE, William T. Wright, Jacobsen, Orr Law Firm, Kearney, NE, for John Lacey.

Gail S. Perry, Brenda S. Spilker, Baylor, Evnen Law Firm, Lincoln, NE, for George Svoboda.

**MEMORANDUM AND ORDER**

PIESTER, United States Magistrate Judge.

In this action plaintiff contends that, during her employment as Clerk of the Village of Shelton, Nebraska, she was subjected to racial slurs and unwanted sexual advances by Defendant Svoboda, the Chief of Police of the Village. In addition, she alleges that the other defendants, who are all members of the Board of the Village of Shelton, either partic-

**BACKGROUND**

From August of 1991 until her resignation in August of 1994, plaintiff, who is part Native American, was employed as the "Village Administrative Clerk/Treasurer" for the Village of Shelton, Nebraska. (Filing 1 at ¶ 12; filing 16 at 6; filing 17 at 13; filing 18 at 13.) Plaintiff contends that throughout her term of employment the Chief of Police of the Village, George Svoboda, subjected her to unwanted sexual contact and a persistent barrage of racial epithets. (Filing 1 at 15–20.)

Specifically, according to plaintiff, during her first year of employment, Defendant Svoboda, a twenty-three year veteran of the force, began referring to her privately as "dumb Indian," "Chief," and "Pocahontas" (Filing 58 at 70:7–12.) Gradually this abusive conduct became more pervasive and more public. In November 1992 Defendant Svoboda used racial slurs to describe the plaintiff in front of several federal law enforcement officers. (*Id.* at 68:18–70:3 and 81:17–25.) When plaintiff complained to Svoboda about his statements, the harassment only grew worse. (*Id.* at 87:19–88:3.) He continued to denigrate plaintiff in front of co-

---

**1.** The parties consented to have me preside at the trial and enter judgment pursuant to 28 U.S.C. § 636(c). (*See* filing 31.)

workers and members of the public, until November of 1993. (*Id.* at 82:1–84:25.) In addition, between June of 1993 and November of 1993, according to plaintiff, Defendant Svoboda either felt or attempted to feel plaintiff's buttocks on three or four different occasions. During one such incident he patted her posterior and commented, "nice ass [f]or a dumb Indian" (*Id.* at 85:11–88:22.)

Beginning in 1992 plaintiff complained to the village attorney, Ron Tvrdik, and several members of the Village Board about the alleged harassment. (*Id.* at 57:4–25 and 142:3–154:13–19). They told plaintiff that "something" would be done about her complaints. (*Id.* at 127:17–128:7). In June of 1994, however, Tvrdik told plaintiff not to discuss her grievances with the Board because the members were tired of hearing them.[2] (*Id.* at 163:20–164:1.) The Board did not discipline Svoboda, (filing 45 at 186:5–188:8), and in fact, the only action the Board took was to enact an official policy about harassment and appoint Defendant Svoboda, the alleged perpetrator, as the person to whom complaints of harassment should be made. (Filing 58, exh. 4.) After plaintiff made her complaints to board members, a Shelton police car often drove past her house at night and shined a spotlight toward her windows.[3] (Filing 51, Plaintiff's Answer to Interrogatory No. 1.)

Plaintiff further alleges that prior to her complaints the Board considered changing her job description from Village Clerk to Village Administrator, a title which apparently carries more prestige among municipal officials. However, after a meeting in December of 1993, plaintiff received a phone call in which she heard Defendant Svoboda screaming in the background, "[I'm not] about to take orders from a fucking woman." (*Id.* at 179:7–183:22.) The Board did not change plaintiff's job title. (*Id.*)

---

2. Plaintiff also complains that during a public ceremony one board member, Defendant Spellman, said "How" as she raised her hand to swear him in as a board member. Plaintiff maintains that this comment was related to her Native American heritage. (Plaintiff's Brief at 11.)

## DISCUSSION

Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The purpose of a motion for summary judgment is to determine whether a "genuine issue of material fact" exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. at 2510. A "genuine issue" regarding a material fact exists "if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Id.*

Summary judgment is properly granted when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, it is clear no genuine issue of material fact remains and the case may be decided as a matter of law. *Greeno v. Little Blue Valley Sewer Dist.,* 995 F.2d 861, 863 (8th Cir.1993). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immate-

---

3. Plaintiff was afraid of Svoboda because she heard him say such things as "don't get mad, get even." (*Id.* at 187:18–190:2.)

rial. The moving party is "entitled to judgment .as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Defendants' motions for summary judgment raise seven major issues: (1) whether plaintiff has a property interest in her employment that would entitle her to due process protections; (2) whether the Village of Shelton and the defendants in their official capacity are amenable to suit under Title VII; (3) whether the individual defendants may be liable under Title VII; (4) the propriety of plaintiff's claims against Defendant John Lacey; (5) whether the Village of Shelton or the defendants in their official capacities are amenable to suit under § 1983; (6) whether the individual defendants were acting under color of law for purposes of § 1983; (7) whether the individual defendants are entitled to qualified immunity under § 1983; and .(8) jurisdiction over pendent state law claims. Each issue is addressed separately below.

### (1) Due Process–Property Interest in Employment

■ In her complaint plaintiff claims that the defendants denied her due process of law, by forcing her to resign from her position as village clerk, thereby depriving her of her interest in continued employment in that capacity. (Filing at ¶ 26–29.) However, "The Fourteenth Amendment's Due Process Clause does not convert the federal courts into arbitral forums for review of commonplace personnel decisions that public agencies routinely make." *Miller v. Lovell,* 14 F.3d 20 (8th Cir.1994). "[A] government employee is entitled to procedural due process only when [she] has been deprived of a constitutionally protected property or liberty interest."

*Winegar v. Des Moines Indep. Com. School Dist.,* 20 F.3d 895, 899 (8th Cir.1994).

A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it. The existence of a property interest must be determined with reference to state law. Typically, this interest arises from contractual or statutory limitations on the employer's ability to terminate an employee....

*Id.* at 899 (citations omitted). *See also Blankenbaker v. McCook Public Power Dist.,* 940 F.2d 384 (8th Cir.1991) (a property interest normally arises from regulatory or contractual provisions which constrain the employer or confer a benefit on the employee).

Plaintiff has identified no statutory or contractual provision to support her asserted interest in her employment as Village Clerk, and the court is aware of none. (*See, e.g.,* filing 1) (failing to specify source of plaintiff's alleged right to continued employment). Thus, she has failed to establish that she has been deprived of a constitutionally protected property interest that would entitle her to procedural due process protections. *Winegar, supra, Miller, supra; Blankenbaker, supra.* I shall therefore grant the defendants' motion for summary judgment on this issue.

### (2) Title VII Claims against the Village of Shelton

Title VII prohibits discrimination by an "employer" on the basis of an individuals race, religion, color, sex, or national origin.[4] 42 U.S.C. § 2000e *et seq.* An "employer" is a person, corporation, or political subdivision "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ..." 42 U.S.C. § 2000e (emphasis added). "The 'current year' as referenced in the statute is the year in which the alleged discrimination occurred." *EEOC v. Pettegrove Truck Serv.,* 716 F.Supp. 1430, 1431 (S.D.Fla.1989) (citing *Dumas v. Town of Mt.*

---

4. The claims against the defendants in their official capacities are claims against the Village of Shelton itself. *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510–11 (4th Cir.), *cert. denied,* 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Miller v. Maxwell's Int'l,* 991 F.2d 583,

587 (9th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). *See Lenhardt v. Basic Inst. of Tech.,* 55 F.3d 377, 380–81 (8th Cir.1995) (citing the above cases with approval while drawing an analogy between Title VII and the Missouri Human Rights Act).

*Vernon,* 612 F.2d 974, 979 n. 4 (5th Cir. 1980)).

█ The affidavit of the custodian of the Village's employment records, plaintiff's successor and current Village Clerk Bonnie Doremus, avers that at no time during the calendar years 1989 through 1994 did the Village employ fifteen or more persons for each working day in each of twenty or more calendar weeks. (Filing 79 and supporting data.) Plaintiff counters that "the 20 week requirement of 15 employees may be fulfilled if at any time during the current or preceding calendar year the employer employed 15 employees for 20 or more calendar weeks." (Plaintiff's Brief at 27) (emphasis added). Plaintiff argues, "Counting the summer months of 1993 and the summer months of 1994, there would have been at least 20 weeks when the Village of Shelton would have employed 15 or more individuals."[5] (*Id.*; filing 70 at ¶ 5.) I, however, do not agree that the weeks may be aggregated between two different years.

In *McGraw v. Warren County Oil Co.,* 707 F.2d 990 (8th Cir.1983), the Eighth Circuit rejected, in an age discrimination case, the assertion that a " 'calendar year' was any period of twelve consecutive calendar months and not the period from January 1 through December 31." *Id.* at 991. It therefore follows that if plaintiff is precluded from using "any period of twelve consecutive calendar months" to establish that the defendant is an employer within the meaning of Title VII, then she is likewise precluded from arguing that a twenty-four month period may be used in this case. *See Slack v. Havens,* 522 F.2d 1091, 1093 (1975) (Title VII "give[s] no evidence" of an intent to measure the "relevant number of employees over the 24 months preceding the incident.") To the contrary the statute allows suit where the defendant employed fifteen or more employees for twenty weeks in either the current year or the preceding year. *See McGraw,* 707 F.2d at 991.

Plaintiff provides no evidence that the Village employed fifteen employees for twenty weeks of any relevant calendar year. (*See* filing 70) (failing to provide any such proof.) Therefore, because there is no material issue of fact regarding this issue, the motions for summary judgment on plaintiff's Title VII claim against the Village and the individual defendants in their official capacities will be granted. *Celotex, supra.*

## (3) Individual Liability under Title VII

█ The individual defendant board members in this matter also claim that they are entitled to summary judgment on plaintiff's Title VII claims against them in their individual capacities, because liability under the Act does not attach to individual supervisors. Indeed, this court has held in a series of recent decisions that Title VII liability does not attach to individual supervisors. *See Evo v. State of Nebraska,* No. 4:CV94–3343, slip op. at 4–6, 1995 WL 935758 (D.Neb. Mar. 8, 1995) (unpublished opinion) (collecting cases); *Ways v. City of Lincoln,* No. CV94–3265, filing 21, 1995 WL 935759 (D.Neb. March 10, 1995) (unpublished opinion); *Schmitz v. Mid Neb. Mental Retardation Serv.,* 4:CV94–3362 (D.Neb. Sept. 15, 1995) (unpublished opinion). Those decisions are apposite, and I shall follow them.

As there are no genuine issues of material fact on this matter and the defendant board members are entitled to judgment as a matter of law, *see Celotex, supra,* I shall grant summary judgment on plaintiff's Title VII claim against Defendants McBride, Lacey, Spellman, Landell, Cole, and Moffitt in their individual capacities.

█ Regarding Defendant Svoboda, plaintiff cannot maintain an action against a coworker under Title VII. *See, e.g., Smith v. St. Bernards Reg. Med. Center,* 19 F.3d 1254, 1255 (8th Cir.1994); *Harvey v. Blake,* 913 F.2d 226, 228 (5th Cir.1990); *Karstens v. Int'l Gamco, Inc.,* 939 F.Supp. 1430 (D.Neb. 1996); *Flowers v. Rego,* 691 F.Supp. 177, 179 (E.D.Ark.1988). As such, I shall also grant the motion in favor of Defendant Svoboda on plaintiff's Title VII claim against him in his individual capacity.

## (4) Defendant John Lacey

Plaintiff alleges in her complaint that Defendant John Lacey discriminated against

---

**5.** Plaintiff cites no authority for the correctness of her proposition.

her on the basis of her sex and national origin by creating a hostile work environment that forced her to resign. (Filing 1.) However, during her deposition the following colloquy took place:

Q. You told [John Lacey] you did not hold him personally responsible for anything, is that right?

A. Correct. I continued to thank him for his support.

Q. And as a Board member, you felt he did everything he could to help you, is that also correct?

A. That is correct.

(Filing 58 at 220:20–25.) In addition, she also made the following statements:

Q. So was there anything else that you can think of that [John Lacey] could or should have done on his behalf?

A. *I think that John did anything and everything humanly possible to help me, in this situation.*

Q. Did you ever-and when you say "your situation," you're referring to the subject matter of this lawsuit that brings us here?

A. Correct.

(*Id.* at 218:22–219:4) (emphasis added.)

In light of plaintiff's admissions, there is no genuine issue of material fact with regard to Defendant Lacey's liability. Therefore, I shall dismiss the remaining claims against him, both in his individual and official capacities.

### (5) § 1983 Claims against the Village and against the Defendants in their Official Capacities

#### (a) Village Board Members

■ Plaintiff also claims, via 42 U.S.C. § 1983, that the Village and the defendants in their official capacities violated her equal protection rights by creating a hostile work environment.[6] Although a municipality is not immune from suit under § 1983, it will be a proper defendant in this action only if certain conditions are met. *Williams v. Mensey*, 785 F.2d 631, 634 (8th Cir.1986). As the court in *Williams* explained:

[A municipality] cannot be held liable *"solely* because it employs a tort feasor— or in other words * * * [it] cannot be held liable under § 1983 on ·a *respondeat superior* theory." [citation omitted] "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."

*Williams*, 785 F.2d at 634–35 (quoting *Monell v. Dept. of Soc. Serv's.*, 436 U.S. 658, 691 (1978)). The alleged wrongful act need not have occurred pursuant to an official edict of municipal officials; it may also occur where the constitutional deprivation was based on custom, even if it "has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036.

Although defendants argue that there was no Village policy promoting workplace harassment, I conclude that there is a material issue of fact as to this issue.[7] Substantial evidence exists that plaintiff repeatedly informed the defendant board members, through various means, that Defendant Svoboda was harassing her. (*Id.* at 57:4–25 and 142:3–154:13–19). As a result, however, the Board did not discipline Svoboda. (Filing 45 at 186:5–138:8). Rather, the only action it took was to enact an official harassment policy and appoint Svoboda, the alleged perpetrator, as the person to whom complaints of harassment should be made, thus effectively insulating him from plaintiff's complaints. (Affidavit of Bonnie Doremus, ex. 6 at 3.)

---

6. Again, plaintiff's § 1983 claims against the defendants in their official capacities are "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). *See also Eagle v. Morgan*, 88 F.3d 620, 629 n. 5 (8th Cir.1996). In an official-capacity suit against local officials, plaintiff must prove that the municipality was "the 'moving force' behind the deprivation" by showing that a policy or custom "played·a part in the violation of federal law." *Graham*, 473 U.S. at 166, 105 S.Ct. at 3105.

7. It is the jury's function to determine whether the decisions of officials caused the deprivation of constitutional rights. *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723–24, 105 L.Ed.2d 598 (1989).

Further, plaintiff has submitted evidence that the Board declined to change plaintiff's job title when Defendant Svoboda protested that he was not "about to take orders from a fucking woman." (*Id.* at 179:7–183:22.) The Board also told plaintiff, through the Village Attorney, not to discuss her grievances with the Board because the members were tired of hearing them. (*Id.* at 163:20–164:1.)

Acquiescence through a longstanding practice or custom can subject a municipality to liability. Larson *Employment Discrimination* § T88B.22, at T–1624.1 (2nd Ed.) (citing *Jett v. Dallas Ind. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723–24, 105 L.Ed.2d 598 (1989)). When coupled with the alleged discriminatory conduct of board member Defendant Spellman during a public ceremony,[8] there is sufficient evidence for a jury to infer that the policies and practices of the Village, perhaps intentionally, created a hostile work environment. Accordingly, the motions for summary judgment on this issue will be denied with respect to the Village and the remaining board members in their official capacities.[9]

#### (b) Defendant Svoboda

■ Plaintiff also brings a § 1983 claim against Defendant Svoboda in his official capacity. (Filing 1.) A governmental entity may be held liable for the actions of one of its officials if that official exercises final decision-making authority, as opposed to mere discretionary power. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–84, 106 S.Ct. 1292, 1299–1301, 89 L.Ed.2d 452 (1986). Determining whether an official had final policy-making authority is a matter of state law. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 124, 108 S.Ct. 915, 924–25, 99 L.Ed.2d 107. Although plaintiff argues that Defendant Svoboda had final decision-making authority over police protection in Shelton, (plaintiff's brief at 14) (citing a number of village ordinances), that authority is largely distinct

from the claims raised in the complaint. Plaintiff further argues that by placing Svoboda as the individual to whom complaints about sexual harassment should be made "the Board appears to give George Svoboda some policy making authority." (*Id.* at 15) (emphasis added). However, as plaintiff admits, the Board, not Defendant Svoboda, had final decision-making authority on issues of harassment. Consequently, he cannot be sued in his official capacity. *Pembaur,* 475 U.S. at 481–84, 106 S.Ct. at 1299–1301. As such, I shall grant the motion for summary judgment as it pertains to the claim against him in his official capacity.

#### (6) Defendant Svoboda's Actions and Status

■ All defendants argue that, as a matter of law, they cannot be liable for the alleged hostile work environment created by Svoboda, because he was not acting "under color of law" and because he had no supervisory authority over plaintiff. Thus, they conclude he was merely a co-worker whose actions could not carry the badge of official authority. Because there are issues of fact surrounding both of these propositions, I shall deny defendants' motions.

It is true "mere employment by the state, although relevant to a determination of whether a defendant's actions are taken under color of law, is not conclusive." *Murphy v. Chicago Transit Authority,* 638 F.Supp. 464, 467 (N.D.Ill.1986) (citing *Polk County v. Dodson,* 454 U.S. 312, 321, 102 S.Ct. 445, 451, 70 L.Ed.2d 509 (1981)). It is also true that, in *some* instances, courts have held that co-workers do not act under color of law for purposes of § 1983 claims of harassment "when the harassment did not involve use of state authority or position." *Woodward v. City of Worland,* 977 F.2d 1392, 1400 (10th Cir.1992) (emphasis added) (citing cases).[10]

---

**8.** Plaintiff alleges that as she raised her hand to swear Defendant Spellman in as a board member during a public ceremony he raised his own hand and said "How."

**9.** Although defendants argue that board members do not have power to enact or change village policy independently, they obviously have the power to do so in concert, and by their status

as board members, they also have power to individually influence the way in which a policy or practice is carried out.

**10.** It is important to note that this distinction applies to claims against the co-workers, not necessarily supervisors who failed to stop harassment by co-workers. *See, infra,* note 12.

"For conduct to relate to state authority, it must bear some similarity to the nature of the powers and duties assigned to the defendant[ ]." *Murphy*, 638 F.Supp. at 468. "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Edwards v. Wallace Community Coll.*, 49 F.3d 1517, 1523 (11th Cir.1995).

Plaintiff has submitted evidence suggesting that, after she complained to board members, on several occasions Svoboda drove past her house at night in a Shelton police car, shining its spotlight in her windows. (Filing 51, Plaintiff's Answer to Interrogatory No. 1.) Defendant Svoboda also allegedly used his apparently considerable influence as a department head to prompt the Board to deny plaintiff's desired change in job status. (*Id.* at 179:7–L83:22.) Further; Defendant Svoboda had been granted some authority over harassment issues by the Village Board. Plaintiff alleges he used that authority, along with his status as a police officer, to harass plaintiff in a way that would prevent her from taking effective action against him. In other words, considering the facts in a light must favorable to plaintiff, Svoboda misused his position as police chief, and the administrative influence of that position, as well as his official responsibility as an equal opportunity contact person, to harass plaintiff with impunity. *See Vang v. Toyed*, 944 F.2d 476 (9th Cir.1991) (state employment officer who used his position to rape women seeking jobs acted under color of law); *Hughes v. Halifax County Sch. Bd.*, 855 F.2d 183, 186 (4th Cir.1988) (the perpetrator must act under authority vested in him by the state, or the harassment must otherwise be possible due to the privileges of his employment). These facts, if proved, would support a jury finding that Defendant Svoboda acted under color of law. *Edwards, supra.*

In addition, to the extent that the jury finds that Svoboda's actions were caused or furthered by his position as an equal opportunity contact person, he also may be regarded by the jury as more than a mere co-employee. *Cf. Woodward*, 977 F.2d at 1400–01. The factual issues noted above, together with such issues as whether Svoboda had knowledge of the defendant board members attitudes toward plaintiff's complaints, preclude summary judgment on this basis as well.

The remaining defendants' argument that if Defendant Svoboda was a co-employee of plaintiff they cannot be held liable must also fail. Numerous courts have held that pervasive sexual harassment by co-employees can constitute a basis for imposing § 1983 liability on supervisors if their failure to protect plaintiff amounted to "intentional discrimination." *See, e.g., Bohen v. City of East Chicago*, 799 F.2d 1180 (7th Cir.1986). In fact, in *Headley v. Bacon*, 828 F.2d 1272, 1274–75 (8th Cir.1987), the Eighth Circuit implicitly recognized a § 1983 action against supervisors for permitting sexual harassment in the workplace.[11] *See Lankford v. City of Hobart*, 27 F.3d 477, 480 (10th Cir.1994) (citing *Headley* for the purpose of determining that such a claim was clearly established); *Woodward*, 977 F.2d 1392, 1393 n. 5 (10th Cir. 1992) ("The Eighth Circuit joined *Bohen* in *Headley v. Bacon*, 828 F.2d 1272, 1274–75 (8th Cir.1987)[.]") I agree with those courts who have recognized such an action and conclude that even if Defendant Svoboda was a co-employee rather than an official who used his position to harass plaintiff, she may bring a claim against those who she alleges intentionally failed to protect her from such harassment, namely the Village and its board members.[12] Therefore, the motions for sum-

---

11. Although in one case the Eighth Circuit stated that it has not considered the issue of whether such a claim is cognizable, *Nicks v. State of Mo.*, 67 F.3d 699, 703 n. 3 (8th Cir.1995), that panel did not cite or discuss the earlier ruling in *Headley*. In *Headley*, plaintiff, who had already been victorious on an earlier Title VII claim regarding workplace harassment, filed a second complaint under § 1983 against her supervisors in their official and individual capacities. 668 F.Supp. 1315, 1317 (D.Neb.1986). This court dismissed the second lawsuit as precluded by res judicata. *Id.* The Eighth Circuit, however, reversed the judgment and held that plaintiff could bring the second lawsuit. 828 F.2d at 1274–75.

12. "[I[] a supervisor or employer participates in or consciously acquiesces in sexual harassment by an outside third party or by co-workers, or if the employing entity has a policy or custom of allowing such sexual harassment in the work-

mary judgment will also be denied as to those defendants on this basis.

### (7) Qualified Immunity

■ The defendants in their individual capacities argue that they are entitled to summary judgment on plaintiff's section 1983 claims on the basis of qualified immunity. The affirmative defense of qualified immunity [13] protects government officials exercising administrative or executive functions from personal liability for money damages on claims raising alleged violations of the Constitution or federal law. The defense, a judicially-created common law remedy first recognized by the Supreme Court in *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), has been characterized as an effort to strike a balance between vindication of constitutional guarantees and the social costs of lawsuits against public officials. *See Harlow v. Fitzgerald*, 457 U.S. 800, 813–14, 816, 102 S.Ct. 2727, 2735–36, 73 L.Ed.2d 396 (1982).[14]

The qualified immunity inquiry is governed by a solely objective analysis:

> government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.

*Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *cf. Mitchell v. Forsyth*, 472 U.S. 511, 517, 105 S.Ct. 2806, 2810–11, 86 L.Ed.2d 411 (1985); *Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017–18, 82 L.Ed.2d 139 (1984). In order to determine whether a defendant is entitled to qualified immunity the court must determine (1) whether plaintiff has asserted the violation of a constitutional right, (2) whether this constitutional right was clearly established at the time the incident occurred, and (3) viewing the facts in a light most favorable to the plaintiff, whether there is a genuine issue of material fact that a reasonable official would have known his or her actions violated that right. *Foulks v. Cole County, Mo.*, 991 F.2d 454, 456 (8th Cir.1993).

The first inquiry is satisfied because plaintiff alleges defendants violated her equal protection rights. The second and third considerations, however, are in dispute. Defendants argue that it had not been established at the time of the alleged harassment that creation of a hostile work environment by a co-employee violated a person's equal protection rights. As discussed above, however, there are factual issues whether Defendant Svoboda did have authority over plaintiff at least insofar as claims of harassment were concerned, and plaintiff alleges he abused that authority to effectively shield himself from her complaints. I therefore construe the facts in plaintiff's favor.

The Eighth Circuit has allowed § 1983 claims of harassment by one with supervisory authority over an employee since at least 1986. *See Hawkins v. Hennepin Tech. Center*, 900 F.2d 153 (8th Cir.1990), (public-sector employer retaliation for complaints of harassment); *Moylan v. Maries County*, 792 F.2d 746 (8th Cir.1986). Thus, it has been clearly established for some time that a harasser with supervisory authority over the victim may be held liable, under § 1983, for that harassment. Moreover, it has been clearly established that supervisors who allow harassment to occur may be held liable under § 1983. *Headley v. Bacon*, 828 F.2d 1272, 1274–75 (8th Cir.1987); *see Lankford v. City of Hobart*, 27 F.3d 477, 480 (10th Cir. 1994) (citing *Headley* for the purpose of determining that such a claim was clearly established). Thus, during the time at issue in

---

place, the supervisor or employer may be liable." *Id.* at 1401.

**13.** Qualified immunity is an affirmative defense that must be pleaded by the defendant official seeking its protection. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991); *Mahers v. Harper*, 12 F.3d 783, 785 (8th Cir.1993). Accordingly, defendant bears the burden of pleading and proving it. *See Mahers*, 12 F.3d at 785.

**14.** These "social costs" include:

the expenses of litigation, the diversion of official energy from pressing public issues, the deterrence of able citizens from acceptance of public office, and the danger that fear of being sued will "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."

*Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736; *see also* id. at 816, 102 S.Ct. at 2737.

this case, the right to be free from harassment in the workplace was clear.

The final question is, viewing the facts in a light most favorable to the plaintiff, whether there is a genuine issue of material fact that a reasonable official would have known his or her actions violated that right. *Foulks v. Cole County, Mo.*, 991 F.2d 454, 456 (8th Cir.1993). Whether or not Defendant Svoboda is considered a mere co-employee, plaintiff's complaints to the board members, if proved, put reasonable officials in defendants' positions on notice that, in light of cases such as *Headley*, if they intentionally failed to stop the harassment, they would violate plaintiff's equal protection rights.[15]

In addition, at the times relevant to this case, many district and appellate courts in the employment context had interpreted Supreme Court decisions as recognizing that those who use authority related to their employment to harass others may be found liable for equal protection violations. *Vang v. Toyed*, 944 F.2d 476 (9th Cir.1991); *Hughes v. Halifax County* Sch. Bd., 855 F.2d at 186; *Murphy*, 638 F.Supp. at 469. Thus, in light of pre-existing law, I conclude that the unlawfulness of using a position of authority to sexually and racially harass another was apparent, and the "contours of the right" to be free from that conduct were "sufficiently clear" that a reasonable police officer in Defendant Svoboda's position and reasonable board members with knowledge of his actions would understand that subjecting plaintiff to workplace harassment violated that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, *Greeno,, supra*, I therefore

conclude that the defendants are not entitled to qualified immunity.

### (8) Supplemental Jurisdiction

Finally, defendants seek to dismiss plaintiff's state law claims for violations of the Nebraska Fair Employment Practice Act, Neb.Rev.Stat. § 48–1101, for lack of jurisdiction. However, as plaintiff's claims for violation of her federal equal protection rights have not been dismissed, the exercise of supplemental jurisdiction is appropriate, 28 U.S.C. § 1367(c)(3), and her state law claims will not be dismissed.

**IT THEREFORE HEREBY IS ORDERED:**

1. Defendants' motions for summary judgment on plaintiff's Title VII claims, (filings 42 and 57), are granted.

2. Defendant Lacey's motion for summary judgment on all claims against him, (filing 57), is granted.

3. Defendant's motions for summary judgment with respect to plaintiff's due process claims, (filings 42 and 57), are granted.

4. The motion for summary judgment on plaintiff's equal protection claim against Defendant Svoboda, (filing 42), is granted with respect to his official capacity and denied with respect to his individual capacity.

5. The motion for summary judgment on plaintiff's state law claims and equal protection claims, against Defendants Village of Shelton, McBride, Spellman, Landell, Cole, and Moffitt (filing 42), is denied.

6. The motions for summary judgment on the basis of qualified immunity, (42 and 53), are denied.

**15.** Defendants' assertion that they may rely on *Nicks v. State of Mo.*, 67 F.3d 699, 703 n. 3 (8th Cir.1995), for the proposition that workplace harassment claims have not been clearly established in this circuit is infirm. First, reliance on *Nicks* for the proposition that such claims have not yet been recognized in this circuit is unreasonable in light of the court's earlier decision in *Headley* impliedly recognizing such claims and the Tenth Circuit's published statements that, under its interpretation of *Headley*, such claims

have been clearly established in the Eighth Circuit. (*See, supra*, at note 11.) Second, the dicta contained in the *Nicks* footnote was issued in 1995, well after the alleged discriminatory conduct in this case took place. At the time of the defendant's alleged misconduct, the footnote in question was not in existence to negate the clear implication of *Headley* and the Tenth Circuit's statements about the law of this circuit. Thus, the defendants could not have been misled by it, and it has no impact on the inquiry.